IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2015 OCT 22  PM 4: 30

CLERK US DISTRICT COURT
WESTERN DISTRICT TEXAS

BY _____

RAYMOND MATTHEW GALASSO d/b/a Verve
L.L.C. d/b/a Galasso & Associates L.P. d/b/a
Raymond M. Galasso P.C. formerly d/b/a Simon,
Galasso & Frantz PLC,

          Appellant,

-vs-

          Case No.  A-15-CA-578-SS

KEVIN IMES,

          Appellee.

_____

# ORDER

BE IT REMEMBERED on the 25th day of September 2015, the Court held a hearing in the above-styled cause, and the parties appeared by and through counsel. Before the Court are Appellant Raymond Matthew Galasso's Brief [#4], Appellee Kevin Imes's Brief [#5], Appellant's Letter Supplement [#7], and Appellee's Letter Supplement [#8]. Having reviewed the documents, the governing law, the arguments of the parties at hearing, and the file as a whole, the Court now enters the following opinion and orders.

## Background

This is an appeal from a final order of the United States Bankruptcy Court for the Western District of Texas, Austin Division, denying a Chapter 7 discharge to Appellant Raymond Matthew Galasso, a licensed attorney and "patent monetization professional." Appellee Kevin Imes is a judgment creditor of Galasso's to the tune of $505,000. After a full bench trial on the merits in an adversary proceeding filed by Imes, the Bankruptcy Court ruled Galasso was not entitled to discharge

because he "failed to keep or preserve" his financial records and "failed to explain satisfactorily . . . [his] loss of assets" in violation of 11 U.S.C. §§ 727(a)(3) and (a)(5). Galasso appeals from that ruling.

## I.      The Main Bankruptcy Proceeding

Imes and Galasso have a long history of involvement mostly irrelevant to this appeal. Suffice it to say their once-friendly relationship significantly soured, culminating in a patent infringement lawsuit filed in this Court and reduced to judgment against Galasso and in favor of Imes in 2010. Galasso never paid Imes the $505,000 he owed pursuant to the judgment; instead, Galasso filed for Chapter 7 bankruptcy in October 2011. Galasso's choice to file for bankruptcy made Imes suspicious, as Imes knew that in 2008 and 2009, Galasso had received over $1 million from the settlement of two legal malpractice claims. Additionally, as the Bankruptcy Court later found, Galasso's law firm collected over $2 million during the period of time from 2008 to 2010.

The problem central to this appeal reared its head quite early: in January 2012, Imes and Galasso began wrangling over Galasso's failure to produce certain financial records necessary to ascertain where all of Galasso's assets went, including many of Galasso's personal bank statements and the bank statements of the legal entities he controlled. *See* Appellee's R. 10 at 1–14[1] (correspondence concerning missing bank statements). Imes provided Galasso with a chart identifying the missing documents and requesting production of same, *see id.* at 8–13, but Galasso never provided a complete production.

---

[1] Citations to Imes's designated items will be cited as "Appellee's R. [Tab Number]," all of which can be found on the CM/ECF docket under Docs. ##1-39–46, and citations to Galasso's designated items will be cited as "Appellant's R. [Tab Number]," which can be found on the CM/ECF docket under Docs. ##1-5–34. All pincites will be to the page numbers generated by CM/ECF with the exception of transcripts, which will be cited to internal pagination and line numbering.

On January 26, 2012, a creditors' meeting was held in the bankruptcy proceeding. *See* Appellant's R. 26 (Creditors' Meeting Tr.). During the meeting, the judge noted the parties had come to the following agreement regarding the missing bank statements:

> THE JUDGE: And what we've agreed is that . . . [Galasso] will provide any waivers or approvals that the banks may require in order for Mr. Imes to obtain bank records relating to any accounts in which Mr. Galasso was an owner or authorized signer or in which he had any equitable or legal tie to the funds or deposit. And the goal being to obtain—that Mr. Imes, at his own cost, will obtain those records with the authorization of the debtor. Am I right so far?
>
> [COUNSEL FOR IMES]:     That's right.
>
> [COUNSEL FOR GALASSO]:       Correct.

Creditors' Meeting Tr. at 2:11–3:1.

Two days later, on January 28, 2012, Galasso stated via email: "I have looked into getting the remaining bank statements . . . requested at Thursday's creditor continued meeting. Bottom line is that I will need to order them . . . and it will cost about $300. As soon as I receive the $300, I will order the statements." Appellee's R. 10 at 16. Counsel for Imes sent a $300 check to be placed in counsel for Galasso's client trust account. *See id.* at 21. While it appears Galasso did, in fact, order the bank statements, *see id.* at 52, by May 7, 2012, Imes had still not recieved complete banking records from Galasso. *See id.* at 32. The $300 check forwarded to counsel for Galasso was never deposited, and it appears Galasso was never charged any fees for obtaining the statements. *See id.* at 35.

## II.     The Adversary Proceeding

On June 4, 2012, still unsatisfied with Galasso's failure to produce complete bank records, Imes filed an adversary proceeding against Galasso, alleging Galasso was not entitled to a Chapter

7 discharge because he had "failed to keep or preserve" his financial records and "failed to explain satisfactorily . . . [his] loss of assets" in violation of 11 U.S.C. §§ 727(a)(3) and (a)(5). *See* Appellant's R. 1 at 1 (adversary proceeding docket sheet). As discovery unfolded in the adversary proceeding, Galasso remained unwilling to produce the bank statements Imes sought, and continually took the position he was not required to obtain them because he had given authorizations to Imes permitting Imes to obtain them himself.

First, during a July 9, 2014 hearing, Galasso told the court he "anticipate[d]" Imes had a problem with "missing documents" and stated he (Galasso) was "giving [Imes] everything that [he] ha[d] and . . . the requests for release and everything[.]" Appellee's R. 1 at 9:9–11. Imes responded "that Mr. Galasso has a superior right to get all these documents . . . and then turn them over to us, or at least give us a list of the documents we're requesting so . . . we get only those documents that actually address our discovery request." *Id.* at 10:14–21. Galasso and the Bankruptcy Court then had the following exchange:

> MR. GALASSO:     Your Honor, if I may, the authorizations—you know, he talks about the superior right, but I'm literally giving him the right. I'm signing away my right for him to go get the documents.
>
> THE COURT:     Well, you can go get them, too. I mean, . . . just because you signed the authorization doesn't mean that that changes your burden of proof of—or changes the burden in establishing that there are sufficient books and records under Section 727.
>
> MR. GALASSO:     Okay.
>
> THE COURT:     But I don't—yeah, I don't see—that doesn't obviate any responsibility that you might have under the Bankruptcy Code to make the disclosures that you have to make.
>
> MR. GALASSO:     Right. Understood.

*Id.* at 12:3–23.

Three months later, on October 8, 2014, the Court held a hearing on Galasso's motion for summary judgment. *See* Appellee's R. 2 (MSJ Hr'g Tr.). Galasso argued in his summary judgment pleadings that he had not concealed or failed to keep or preserve his financial records, as he had provided Imes with all of the bank statements and financial information he possessed. *See* Appellant's R. 4 at 7. Galasso further stated he "signed, and continues to offer to sign, any releases necessary for [Imes][2] to request this information from any bank that he feels is appropriate" and thus that "[a]ny banking account information that Plaintiff claims is missing . . . while not in Defendant's possession are not, in fact, 'missing' and are readily available from the bank for a small fee." *Id.* at 6. During the hearing, Galasso summed up his position: "[T]here was an agreement about these bank statements and it became their burden—these particular bank statements, specific bank statements—became their burden via this agreement in January 2012." MSJ Hr'g Tr. at 5:18–22.

The Bankruptcy Court denied Galasso's motion for summary judgment[3] and again informed Galasso that the burden to explain where his assets went remained with him, not with Imes:

> THE COURT: At the end of the day you're going to have to explain where your assets went because that's what you have to do to get a discharge. And at the end of the day you're going to have to come up with the documents that—I mean, the Code says "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve."

*Id.* at 12:10–15, 18:4–5.

---

[2] Galasso's motion states "Defendant [Galasso] has signed, and continues to offer to sign, any releases necessary for Defendant to request this information from any bank that he feels is appropriate." Appellant's R. 4 at 6. The second "Defendant" appears to be a typographical error.

[3] The Court denied Galasso's motion as to the §§ 727(a)(3) and (a)(5) claims at issue in this appeal. Several § 727(a)(4) claims, irrelevant to this appeal, were variously granted and denied in the summary judgment motion. *See* Appellant's R. 13 at 2 (granting in part and denying in part Galasso's motion for summary judgment).

On November 25, 2014, fifteen days prior to docket call, Galasso produced a large number

of previously unproduced documents to Imes. *See* Appellee's R. 3 at 2 ¶¶ 1.4, 1.5; Appellee's R. 6

(Docket Call Tr.) at 5:3–5, 12–14. Imes objected to the last-minute production. *See* Appellee's R.

3. At docket call, the Bankruptcy Court continued the trial setting and ordered the parties to submit

briefing on the question whether Galasso would be permitted to go to trial with the late-produced

documents and what sanctions might be imposed against Galasso for his failure to cooperate in

discovery. *See* Docket Call Tr. at 19:2–14.

The parties reconvened on January 28, 2015. *See* Appellee's R. 7. During the hearing, the

Bankruptcy Court judge ruled "that if a document wasn't produced prior to the discovery cut-off, it's

not coming in," and reserved ruling on the question whether late-produced documents attached to

Galasso's summary judgment reply would be admissible. *Id.* at 9:21–22. Ultimately, on March 2,

2015, the court ruled Galasso would be permitted to use one exhibit from the summary judgment

reply, but no others. *See* Appellee's R. 8 at 4:9–24. Additionally, the court made a specific ruling

with respect to Galasso's argument regarding the alleged agreement and the parties' respective

burdens:

> THE COURT: . . . Finally, [Galasso] alleges that [Imes] at one time agreed to get
> financial documents using [Galasso]'s authorizations. Even if that's true, it doesn't
> matter. Once the adversary proceeding was filed and once the loss of assets was
> established, the burden of production fell on [Galasso].

*Id.* at 5:7–12.

The adversary suit was tried to the bench on April 13–14, 2015. *See* Appellant's R. 28 (Oral

Ruling) at 3:21. Three witnesses—Galasso, Mark Rambin, Imes's expert witness, and Dan Roberts,

the Chapter 7 Trustee—testified during the trial. *Id.* at 22–24. On April 29, 2015, the Bankruptcy

Court orally ruled Galasso was not entitled to a Chapter 7 discharge. Specifically, the court held Galasso failed to carry his burden under §§ 727(a)(3) and (a)(5) to show where the $3 million he collected from 2008 to 2010 had gone, discussing Galasso's "nearly complete failure to preserve and maintain the books and records that one would ordinarily expect and from which the disposition of all that money could be ascertained." *Id.* at 10:11–14.

The Bankruptcy Court detailed the inadequacy of the evidence Galasso introduced into the trial record, noting Galasso's total failure to provide analysis of where the $2 million collected by his law firm during 2008–2010 had gone, the inadequacy of various unproven demonstrative exhibits admitted by Galasso, and tax returns which raised more questions than they answered, among other matters. *See id.* at 10–19. Importantly, at the outset of its ruling, the Bankruptcy Court addressed on the record Galasso's arguments related to the alleged agreement:

> I'd like to address at the start two matters that had a bearing on this case. The first is Mr. Galasso's failure to respond to discovery in a meaningful manner and failure to observe pretrial deadlines. Specifically, Mr. Galasso did not provide initial disclosures, did not respond to a number of discovery requests propounded by plaintiff, other than by asserting blanket objections, and did not timely identify witnesses he later sought to have testify.
>
> The result of these failures has been the exclusion of the witnesses and a limitation on exhibits to those produced prior to the discovery cut-off, with the exception of some documents related to the construction of a swimming pool and some home improvements.
>
> The second is the suggestion that the plaintiff, Mr. Imes, agreed to undertake to obtain the financial information needed to fulfill Mr. Galasso's obligations under 727(a)(3) and (5), merely because Mr. Imes was willing to try to provide some third-party records—attain third-party records using authorizations signed by Mr. Galasso prior to the deadline for objecting to discharge.
>
> The evidence does not support that the agreement suggested by Mr. Galasso ever existed.

*Id.* at 5:10–6:6.

This appeal followed. Notably, Galasso has failed to include a complete transcript of the trial proceedings in the record on appeal; of the trial proceedings, solely the Bankruptcy Court's oral ruling is part of the record. Similarly, none of the exhibits introduced at trial, save (1) the transcript of the January 2012 creditors' meeting and (2) a chart showing financial information related to Galasso's consulting company, are included in Galasso's designations. The exhibits excluded by the Bankruptcy Court as untimely produced are likewise absent from the appellate record.

## Analysis

### I.      Standard of Review

On appeal, "[a] bankruptcy court's findings of fact are subject to review for clear error, and its conclusions of law are reviewed de novo." *In re Morrison*, 555 F.3d 473, 480 (5th Cir. 2009). "Under a clear error standard, this court will reverse only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been made." *Id.* (quotation omitted).

### II.      Application

Galasso's *pro se* brief raises seventeen separate issues on appeal. In general, Galasso argues the Bankruptcy Court erred in: (1) its findings and conclusions concerning the alleged January 2012 agreement and its effect on the bankruptcy proceedings; (2) denying discharge under § 727(a)(3) because Galasso failed to produce records allegedly containing confidential client information; (3) admitting certain demonstrative exhibits used by Imes at trial and permitting Mark Rambin, Imes's expert, to testify in a lay-witness capacity concerning how he "compiled" those exhibits; and (4) considering or failing to consider various pieces of evidence. Before turning to the merits,

however, the Court must consider a preliminary argument: Imes contends this appeal is subject to dismissal in its entirety given Galasso's failure to designate a complete appellate record.

As set forth below, the Court first finds only Galasso's first three issues on appeal, all of which concern the alleged January 2012 agreement, are fairly reviewable on the present record, and dismisses Galasso's issues four through seventeen. Turning to the three reviewable issues, the Court finds no error in the Bankruptcy Court's findings and conclusions. Thus, the Court affirms the decision of the Bankruptcy Court.

## A. Sufficiency of the Record on Appeal

Rule 8009[4] of the Federal Rules of Bankruptcy Procedure requires an appellant to "file with the bankruptcy clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented." FED. R. BANKR. P. 8009(a)(1)(A). The appellee may thereafter designate additional items to be included in the record on appeal. *Id.* at 8009(a)(2). In addition to the items designated by the parties, the record "must" contain "the judgment, order, or decree being appealed," "any opinion, findings of fact, and conclusions of law relating to the issues on appeal, including transcripts of all oral rulings," and importantly to the present case, "any transcript ordered under subdivision (b)." *Id.* at 8009(a)(4). Among other directives, subdivision (b) provides that "[i]f the appellant intends to argue on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant *must* include in the record a transcript of all relevant testimony and copies of all relevant exhibits." *Id.* 8009(b)(5) (emphasis added).

---

[4] Formerly cited as Rule 8006. *See* FED. R. BANKR. P. 8009.

Dismissal of the appeal may be appropriate where the record does not disclose the factual or legal basis of the bankruptcy court's decision, and the appellant has failed to provide the reviewing court with key portions of the record. *See In re Emmons-Sheepshead Bay Dev. LLC*, 518 B.R. 212, 218 (E.D.N.Y. 2014) (collecting cases). However, a reviewing court may choose to resolve the appeal when the record, although incomplete, is sufficient to enable an informed review of the parties' arguments. *See id.* (citing *Kyle v. Dye*, 317 B.R. 390, 393–94 (9th Cir. BAP 2004)).

The Court finds the record before it, although incomplete, is sufficient to enable an informed review of the parties' arguments concerning Galasso's first three issues on appeal, all of which concern the alleged January 2012 agreement. The parties repeatedly hashed and rehashed the fundamental issue related to the alleged agreement—whether Galasso was, given the alleged agreement, relieved of his burden to obtain and produce the bank statements and other missing financial information—before the Bankruptcy Court at various stages of the proceedings. The Court believes the record on appeal fairly discloses the substance of the parties' positions and the Bankruptcy Court's rulings on the matter.

As for the remainder of Galasso's issues on appeal, however, the Court finds the record before it is insufficient to permit informed review. First, Galasso's issues four through seven raise various complaints regarding the Bankruptcy Court's decision to deny discharge under § 727(a)(3) because Galasso failed to keep certain financial records related to his law firm's accounts receivable. Galasso apparently claimed he could not produce those records because they were client trust account and IOLTA records containing confidential client information. While the Court is not clear whether this was a discovery dispute, an issue litigated during trial, or both, the Bankruptcy Court did state in its oral ruling that Galasso's explanation of his failure to produce the records was

-10-

"specious," as the records "could have easily been produced on a redacted basis with enough information included[.]" Oral Ruling at 7:5–10. To the extent this issue was tried before the Bankruptcy Court, the Court lacks the information necessary to evaluate the Bankruptcy Court's holding, as neither the portions of Galasso's testimony concerning these alleged client trust account and IOLTA records nor the records themselves appear in the record on appeal.[5]

Second, in issues eight through fourteen, Galasso raises complaints related to demonstrative trial exhibits 40–45, which were prepared by Mark Rambin but admitted as demonstratives, not as substantive evidence or expert testimony. *See* Appellant's Br. [#4] at 9–10. Galasso complains those exhibits were (1) "new expert opinions regarding new allegations," not "merely demonstrative exhibits"; (2) not timely disclosed under Federal Rule of Civil Procedure 26 (which governs the timely disclosure of expert witness disclosures, *see* FED. R. CIV. P. 26); (3) insufficient to "me[e]t Imes'[s] burden of proof," and (4) contained expert "opinions" outside the scope of Rambin's expert report. *Id.* These claims, too, cannot be fairly evaluated on the present record.

Underlying all of these objections is an assumption the Bankruptcy Court treated the demonstrative exhibits as substantive expert testimony, or at least as substantive evidence. Statements in the Bankruptcy Court's oral ruling flatly contradict this position—the court notes, for example, that "[m]uch of [Imes]'s case, in terms of time, was spent *proving up* the figures on Exhibit 45," Oral Ruling at 11:3–4 (emphasis added)—but as no transcript of the trial proceedings has been included in the record, this Court has no idea what transpired concerning demonstrative exhibits 40–45 during trial, or what specific evidence was used to prove them up. While the Bankruptcy

---

[5] The undersigned additionally notes Galasso has conspicuously failed to offer any explanation as to why the client trust account and IOLTA records could *not* have been produced in a redacted form.

Court states in its oral ruling that the proof offered to support exhibits 40–45[6] "came in the form of other exhibits, specifically bank statements," and found from that proof that the demonstratives were "reasonably accurate representation[s]" of what they purported to be, *id.* at 11:25–12:6, the Court has no way to evaluate those statements. Further, some of Galasso's objections in issues eight through fourteen suggest the Bankruptcy Court erred in permitting Rambin to testify in a non-expert capacity concerning how he "compiled" exhibits 40–45. *See* Appellant's Br. [#4] at 10 ¶¶ 11–12 (objecting to Rambin's "testimony . . . in a capacity other than as an expert witness"). As Rambin's testimony does not appear in the appellate record, the Court again has no basis for evaluation of these objections.

Finally, in issues fifteen, sixteen, and seventeen, Galasso complains the Bankruptcy Court erroneously considered or failed to consider several different types of evidence in denying Galasso's petition, including the business records of a law firm in which Galasso was an equity partner, certain accounting records of businesses Galasso controlled, and Galasso's bankruptcy petition itself. *See id.* at 11. None of these records appear in Galasso's designations on appeal, and no relevant portions of the trial transcript are excerpted. Thus, the Court again lacks the information necessary to conduct an appellate review.

Accordingly, the Court dismisses Galasso's issues four through seventeen.

**B.     Review of Issues Concerning the Alleged January 2012 Agreement**

The Court turns to the only issues on appeal which can fairly be reviewed on the present record: Galasso's complaints relating to his alleged agreement with Imes formed during the January

---

[6] The Court describes exhibit 45 as the key exhibit and exhibits 40–44 as "supporting exhibits," all of which comprised "a demonstrative compilation of transactions." Oral Ruling at 11:16–18.

2012 creditors' meeting.  Galasso argues the Bankruptcy Court erred in (1) finding Galasso and Imes never made an agreement Imes would be responsible for obtaining Galasso's financial records, *id.* at 6; (2) "using the absence of records" to deny Galasso's discharge, given that the agreement allegedly existed, *see id.*; and (3) failing to consider whether the alleged agreement provided Galasso with "justifi[cation]" for his failure to keep or preserve his records, *see id.* at 7; 11 U.S.C. § 727(a)(3) (discharge will be denied for failure to keep books and records "unless such act or failure to act was justified under all of the circumstances of the case").  The Court rejects Galasso's arguments.

The parties disagree concerning the applicable standard of review for all three issues.  Galasso argues a de novo review is required because his issues related to the agreement concern conclusions of law.  Imes responds a clear error or abuse of discretion standard is applicable because Galasso's issues concern either the Bankruptcy Court's findings of fact or evidentiary rulings.  The Court agrees with Imes.

    i.    **Existence of the alleged agreement**

First, the Bankruptcy Court's finding no agreement existed was a finding of fact.  While the question whether a contract is ambiguous is one of law, *e.g., J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003), "[w]hether the parties reached an agreement is a question of fact," *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (quoting *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).  Here, Galasso's position is that during the January 2012 creditors' meeting, the parties reached an agreement that Imes bore the burden to obtain Galasso's bank statements and other financial documents from the appropriate banks.  Galasso does not argue the agreement is ambiguous.  *See* Appellant's Br. [#4] at 6–7 (framing the issue as whether the

Bankruptcy Court "erred in using the absence of records . . . to deny discharge" when "Imes agreed, pursuant to the Agreement, to assume responsibility to request and obtain such information and records"). The question is *not* what the alleged agreement means; it is whether an alleged agreement of that scope ever existed at all. That is a factual question.

The Court finds no clear error in the Bankruptcy Court's finding the parties never made such an agreement. The January 2012 creditors' meeting took place well before the adversary proceeding was ever filed, and the discussion during the meeting did not mention or even contemplate the parties' burdens in an adversary proceeding. As the Bankruptcy Court noted, the transcript reflects nothing more than Imes's willingness to obtain some third-party records at his own cost with Galasso's authorization. *See* Creditors' Meeting Tr. at 2:11–3:1 ("Debtor will provide any waivers or approvals that the banks may require in order for Mr. Imes to obtain bank records . . . . Mr. Imes, at his own cost, will obtain those records with the authorization of the Debtor.").

Even under a less deferential standard of review, the result would be the same. Only two days after this sweeping agreement was allegedly formed, Galasso wrote in an email: "I have looked into getting the remaining bank statements . . . requested at Thursday's creditor continued meeting. Bottom line is that I will need to order them . . . and it will cost about $300. As soon as I receive the $300, I will order the statements." Appellee's R. 10 at 16. These statements are totally inconsistent with Galasso's position he and Imes formed a contract making Imes solely responsible for obtaining any of Galasso's own missing financial information.

ii.     **"Use of the absence of records"**

The Court construes Galasso's second issue—the Bankruptcy Court's "use of the absence of records" to deny discharge—as a complaint regarding the Bankruptcy Court's exclusion from trial

the financial records Galasso produced to Imes fifteen days before trial was set to begin and months after the discovery deadline had passed. The Bankruptcy Court's decision was a Rule 37 sanction for failure to cooperate in discovery, *see* Appellee's R. 6 at 3:23–25; Appellee's R. 7 at 31:14–19; FED. R. CIV. P. 37, and as the imposition of sanctions is discretionary, it is reviewable for an abuse of discretion. *In re First City Bancorporation of Tex. Inc.*, 282 F.3d 864, 867 (5th Cir. 2002) (citing *In re Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997)).

Rule 37, which governs a party's failure to cooperate in discovery, such as by failing to make disclosures, respond to interrogatories, or produce responsive documents, permits the court to "prohibit[] the disobedient party . . . from introducing designated matters in evidence." FED. R. CIV. P. 37(b)(2)(A)(ii); *see also id.* 37(c)(1)(C), (d)(3). Here, Galasso failed to cooperate in discovery, and had notice, prior to the close of discovery, that his failure was unjustified. During the July 2014 hearing in the adversary proceeding, Galasso took the position he had provided Imes with a complete production by (1) turning over everything he, Galasso, had in his actual physical possession and (2) signing authorizations permitting Imes to seek Galasso's bank records on his own. The Bankruptcy Court informed Galasso that signing authorizations did not discharge his burden under the Bankruptcy Code. *See* Appellee's R. 1 at 12:11–14, 20–23 ("THE COURT: . . . [J]ust because you signed the authorization doesn't mean that . . . changes the burden in establishing that there are sufficient books and records under Section 727. . . . [T]hat doesn't obviate any responsibility that you might have under the Bankruptcy Code. MR. GALASSO: Right. Understood."). Galasso knew, as of July 2014, that he was required to produce the missing documents despite giving Imes authorizations, confirmed he understood that requirement, and nevertheless failed either to timely produce them or to move for an extension of time to complete discovery. Accordingly, the

Bankruptcy Court sanctioned Galasso under Rule 37 by excluding the untimely documents from trial. Doing so was not an abuse of discretion.

### iii.     Failing to consider whether the alleged agreement provided "justification under the circumstances"

Galasso's final issue on appeal—that the Bankruptcy Court erred by "not considering whether the existence of the Agreement . . . provided [Galasso] justification under the circumstances" for his failure to keep accurate records—is subsumed within his first issue, as it is in essence a complaint the Bankruptcy Court found no agreement existed. *See* Appellant's Br. [#4] at 35 ("In not recognizing the existence of the Agreement . . . the Bankruptcy Court also erred in not using the Agreement as justification for the absence of books, records, documents, and information."). The Court finds no clear error here for the same reasons there is no such error concerning Galasso's first issue on appeal.

### Conclusion

All of Galasso's issues not subject to dismissal for failure to provide a reviewable record on appeal lack merit. As such, the decision of the Bankruptcy Court to deny Galasso's application for Chapter 7 discharge is affirmed.

Accordingly:

IT IS ORDERED that the judgment of the Bankruptcy Court is AFFIRMED.

SIGNED this the 22nd day of October 2015.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE